**FRITO–LAY INC., a Corporation, Appellant,**

v.

**Salvador RAMOS, Appellee.**

No. 08–88–00222–CV.

Court of Appeals of Texas, El Paso.

May 3, 1989.

Rehearing Denied May 31, 1989.

Jack Brewster, Brewster and Mayhall, El Paso, for appellant.

Clinton Cross, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

OPINION

OSBORN, Chief Justice.

This appeal is from a judgment awarding actual and exemplary damages to a party based upon an alleged assault and battery by an employee who was alleged to be in

the course and scope of his employment for his employer at the time of the incident. Suit was filed only against the employer who appeals the adverse judgment which is based upon a jury verdict. We affirm in part and reverse and render in part.

Jose Padilla was employed as a district sales manager for Frito–Lay. On July 11, 1984, he was acting as a route salesman while the regular salesman was on vacation. He testified that he made a route stop at Sal's Beverage Shop. He said he was told by Mrs. Ramos that she was dissatisfied with the Frito–Lay service and no longer needed their products in the store. He asked if there was anything he could do to change her mind and she told him, "No . . .," and for him to pick up his merchandise. He took the company products off a custom-made rack and paid her for it. He took one rack to his van and was about to pick up another rack which had other company merchandise on it when Mr. Ramos said that rack had been given to him by the regular route salesman. Mr. Padilla said the route salesman had no authority to give away Frito–Lay merchandise racks. Mr. Ramos threatened to call the police but he never did. Mr. Padilla testified he left the store without the rack and without any further difficulty. He said he never touched Mr. Ramos and that his company has a policy which prohibits fighting with a customer or another employee.

Mr. Ramos said when he complained about the service, Mr. Padilla said he would pull out his merchandise. He said after Mr. Padilla loaded one rack in his van, he came back for the second rack. Mr. Ramos testified his regular route salesman had given him that rack and he had fixed it up and painted it. He said a confrontation occurred and Mr. Padilla pushed him against the cash register and hurt his back. He testified he saw a doctor on two occasions for his back pain and that he was in bed for about a week.

Mrs. Ramos testified to substantially the same facts as her husband. She acknowledged the rack in question was a Frito–Lay rack. She testified about the shoving inci-

dent and said that Mr. Padilla left the store and did not take the second rack.

· The jury found that: (1) Jose Padilla committed an assault and battery on Salvador Ramos; (2) the assault and battery was a proximate cause of the injuries suffered by Mr. Ramos; (3) at the time of the occurrence in question, Jose Padilla was not deviating from the service of Frito–Lay in the furtherance of its business; (4) the damages for physical pain were $500.00; (5) no damages were sustained for mental anguish; (6) the reasonable medical bills were $200.00; and (7) the exemplary damages were $3,000.00.

The Appellant presents ten points of error which involve basically three issues. These are: (1) whether the attack occurred while the company employee was in the course and scope of his employment; (2) whether the employee was in a managerial capacity so as to make the company liable for exemplary damages; and (3) whether trial errors should result in a reversal.

First, we consider the sufficiency of the evidence to support the jury's answer to Special Issue No. Three. In passing on the no evidence issue, we apply the standards set forth in *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). We apply the standards set forth in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), to the insufficient evidence and great weight issues. Both Mr. and Mrs. Ramos testified to physical conduct by the Frito–Lay employee who, at the time, asserted a right to take what the employee identified as company property and which Mr. Ramos claimed as a gift from a company employee.

Much has been written about whether an attack by an employee normally results from a personal animosity and is outside the master's business, which usually is the case, or whether the employer placed the employee in a position which involved the use of force, and his conduct is within the course and scope of his employment. The leading cases in Texas are *Houston Transit Co. v. Felder*, 146 Tex. 428, 208 S.W.2d 880 (1948) and *Texas & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236 (1952). Those two cases and subsequent

opinions by Courts of Civil Appeals form the basis for the article "Vicarious Liability of an Employer for an Assault by His Servant: A Survey of Texas Cases Reexamining the 'Rule of Force' " by Charles E. Cantu, 4 St. Mary's L.J. 169 (1972). More recent cases have discussed the split of authority on the application of the "rule of force" provision. *Green v. Jackson*, 674 S.W.2d 395 (Tex.App.—Amarillo 1984, writ ref'd. n.r.e.); and *Rosales v. American Buslines, Inc.*, 598 S.W.2d 706 (Tex.Civ. App.—El Paso 1980, writ ref'd n.r.e.).

Clearly, an attack based primarily upon a confrontation or ill will between an employee and a third party will be found to be outside the normal course and scope of employment. *Kendall v. Whataburger, Inc.*, 759 S.W.2d 751 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Tierra Drilling Corporation v. Detmar*, 666 S.W.2d 661 (Tex.App.—Corpus Christi 1984, no writ).

■ In our case, the issue is not just over an exchange of words about the type of service the customer was receiving. It involved the right to certain personal property. Mr. Padilla knew the rack was custom made for Frito–Lay. He concluded the route salesman had no right to give that property to a customer. Thus, he concluded that as a company employee, he was obligated to remove all company equipment if the customer no longer was going to sell its merchandise. Under those circumstances of being responsible for what he thought was company equipment, he was acting within the course and scope of his employment. The evidence supports the jury's answer and it is not against the great weight and preponderance of the evidence. Points of Error Nos. One, Two, Five and Six are overruled.

Next, we consider the issue of the company's liability for exemplary damages. It was alleged that Mr. Padilla was employed in a managerial capacity as a district sales manager and acting within the scope of his employment on the occasion in question. The only issue submitted as to the recovery of exemplary damages was the damage issue itself. There were many objections to the charge, but none about the failure to submit liability issues which would support the award of exemplary damages, and there is no point of error complaining about a failure to submit such issues. In the absence of such issues and valid objections, we must presume the trial court found those issues so as to support its judgment. *Strauss v. LaMark*, 366 S.W.2d 555 (Tex. 1963); *Barcheers v. Braswell*, 548 S.W.2d 76 (Tex.Civ.App.—El Paso 1977, no writ); W.D. Masterson, Jr., Preparation and Submission of Special Issues in Texas, 6 Sw.L. J. 163 (1952).

■ Texas recognizes the rule that a master is liable for exemplary damages if the agent who caused actual damage by his tortious conduct was engaged in a managerial capacity and was acting in the scope of his employment. *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967). The landmark cases with regard to corporate liability for exemplary damages arising from acts of an employee were written by Chief Justice Cureton in *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397 (1934); *Morton Salt Co. v. Wells*, 123 Tex. 151, 70 S.W.2d 409 (1934); *Southwestern Gas & Electric Co. v. Stanley*, 123 Tex. 157, 70 S.W.2d 413 (1934). He wrote that the corporation is liable for exemplary damages which arise out of the conduct of a vice-principal because his acts are the very acts of the corporation itself. The *Russell* opinion describes four classes of employees who constitute a vice-principal. Mr. Padilla fits into none of those classes.

■ The Appellee relies upon the holding in *Purvis v. Prattco, Inc.*, 595 S.W.2d 103 (Tex.1980), to support the trial court's judgment. In that case, the employee was a night manager of a Holiday Inn. He was the senior employee on duty from 11:00 p.m. to 7:00 a.m. and thus "in charge of, and responsible for, the operation of this large motel near a major airport. . . ." The court held he was employed in a managerial capacity. In our case, Mr. Padilla had a title of district sales manager. He was in charge of twelve salesman. There is no evidence of any authority to hire or fire company employees. But, the controlling

factor is that at the time of the incident in question, Mr. Padilla was not performing the tasks of a sales manager, he was driving a delivery van and performing the usual task of a route salesman. We find no comparison between the task and responsibilities of a night manager of a large motel and those of a normal route salesman. We conclude that Mr. Padilla, on July 11, 1984, was not responsible for the management of a department or division of Frito–Lay, he was not a vice-principal and was only a servant whose conduct cannot serve as a basis for the award of exemplary damages against his employer. Points of Error Nos. Three and Four are sustained. Point of Error No. Ten, contending the exemplary damages are excessive, is moot and is overruled.

The Appellant contends in Points of Error Nos. Eight and Nine, that there is no evidence to support the jury's answer to Special Issue No. Six because the evidence reflects no connection between the claimed bills and the incident involved in this suit. We agree. Only medical records were offered. The bills for a visit to Dr. Hazarian on July 19, 1984, totaled $184.05, the amount awarded in the judgment. The report of the doctor dated July 20, 1984, reflects he saw and examined Mr. Ramos on July 19, 1984, just over a week after this incident. His report is to Aetna Life & Casualty, it says: "Attention: Workers' Compensation Claims" and reflects that the report is with regard to an accident on December 7, 1980, and the employer was Southwestern Community House. There is nothing about a shoving incident and if the doctor found symptoms from a second accident, surely he would have reported those to the compensation carrier who was concerned about disability from a prior accident. There is no proof the expenses incurred on July 19, 1984, were incurred as a result of the wrongful acts of Mr. Padilla. Without that proof, recovery must be denied. *Texas & N.O.R. Co. v. Barham*, 204 S.W.2d 205 (Tex.Civ.App.—Waco 1947, no writ). Points of Error Nos. Eight and Nine are sustained.

We have reviewed all of the other complaints and find no reversible error in the issues raised. Point of Error No. Seven is overruled.

The judgment of the trial court is reversed so as to deny recovery for the medical bills and the award of exemplary damages, and interest on those amounts, and in all other respects the judgment is affirmed.